IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02920-PAB

PAUL MOREHEAD,

    Applicant,

v.

THE DOUGLAS COUNTY, COLORADO, COUNTY COURT and
CYNTHIA H. COFFMAN, Attorney General, State of Colorado,

    Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

Applicant, Paul Morehead, has filed through counsel an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("the Amended Application") [Docket No. 11]. Mr. Morehead is challenging the validity of his conviction in the County Court for Douglas County, Colorado, case number 11T4296. Respondents have filed an Answer to Amended Application for Writ of Habeas Corpus ("the Answer") [Docket No. 30] and Mr. Morehead has filed Applicant's Response to Answer ("the Traverse") [Docket No. 33]. After reviewing the record, including the Amended Application, the Answer, the Traverse, and the state court record, the Court concludes Mr. Morehead is not entitled to relief on his remaining claim.

**I. BACKGROUND**

A jury convicted Mr. Morehead of driving while ability impaired and he was sentenced to serve ten months in jail with an additional 365 days stayed upon condition of successful completion of supervised probation. The Douglas County District Court

affirmed the judgment of conviction on direct appeal. *See* Docket No. 8-4. On October 14, 2014, the Colorado Supreme Court denied Mr. Morehead's petition for writ of certiorari. *See* Docket No. 8-10.

Mr. Morehead asserts one claim for relief contending he "was convicted in violation of his right to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the Un[it]ed States by the knowing use of perjured testimony and the suppression of evidence which would have revealed the perjury to the jury." Docket No. 11 at 4 (capitalization altered). This claim has two distinct parts, actual perjury and suppressed evidence. The testimony that allegedly was perjured was provided by Cynthia Burbach, then the Director of the Colorado Department of Public Health and Environment's Forensic Toxicology Laboratory, who testified at Mr. Morehead's trial regarding the blood alcohol testing. Mr. Morehead alleges that "Burbach gave materially false testimony about her laboratory's suspension and about the laboratory's failure of an American Board of Forensic Toxicologist's Accreditation Inspection." Docket No. 11 at 9. The evidence Mr. Morehead contends was suppressed relates to Ms. Burbach's academic credentials and allegedly would have shown Ms. Burbach knew she had misrepresented her academic credentials in testimony in prior cases.

On April 27, 2015, the Court dismissed the actual perjury portion of the claim as unexhausted and procedurally barred. Only the suppressed evidence portion of the claim remains to be addressed on the merits.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Morehead bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *See Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly

3

stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Morehead seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law

> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Morehead bears the burden

of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law."  *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).  "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ."  *Id*.; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).  Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.  *Brecht*, 507 U.S. at 637.  "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."  *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).  "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error."  *O'Neal*, 513 U.S. at 435.  The Court makes this harmless error determination based upon a review of the entire state court record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  See *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  MERITS OF APPLICANT'S SUPPRESSED EVIDENCE CLAIM

As noted above, the evidence Mr. Morehead contends was suppressed relates to Ms. Burbach's academic credentials and allegedly would have shown Ms. Burbach knew she had misrepresented her academic credentials in testimony in prior cases. According to Mr. Morehead, "[d]efense attempts to subpoena material to establish that Cynthia Burbach was a serial perjurer who was at liberty because of a tacit understanding that she would not be prosecuted for her past perjuries so long as she continued to be useful to the prosecution, were met with a court order quashing the subpoena."  Docket No. 11 at 5.  Mr. Morehead does not contend that Ms. Burbach perjured herself with respect to her academic credentials at his trial.  Instead, he contends "a serial perjurer was permitted to testify as to the presence of alcohol in intoxicating levels in the Applicant's blood and Applicant was denied the opportunity to confront the witness with her history of perjury and her alignment with the prosecution."  Docket No. 11 at 9.

It was clearly established when Mr. Morehead was convicted that suppression "of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be

favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Prejudice satisfying the third element exists 'when the suppressed evidence is material for *Brady* purposes.'" *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2009) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). Generally, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quotation marks omitted). A reasonable probability of a different result exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434 (quotation marks omitted).

Although Mr. Morehead presents the suppressed evidence claim as a *Brady* violation, Respondents assert in their Answer that "the question presented is not whether the evidence was improperly withheld by the prosecution [under *Brady*], but rather whether the County Court improperly failed to conduct an *in camera* inspection and quashed the Applicant's Subpoena for Ms. Burbach's educational records." Docket No. 30 at 15. Thus, according to Respondents, the relevant clearly established federal law is the Supreme Court's decision in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), which addresses the proper standard for *in camera* review of otherwise privileged records.

The Court is not persuaded that the relevant clearly established federal law is found in *Ritchie*. In any event, even if *Ritchie* did apply, Respondents contend that Mr.

Morehead's claim lacks merit because the educational records he sought to obtain were not material. As discussed below, the same materiality inquiry is the key to resolving Mr. Morehead's claim under *Brady*.

The Court also declines to address Mr. Morehead's argument in his Traverse that his constitutional right to effective cross-examination under *Davis v. Alaska*, 415 U.S. 308 (1974), was violated because he did not raise such a claim in the amended application. Furthermore, because *Davis* addresses the Sixth Amendment right of Confrontation, *see id.* at 315, that decision does not set forth any clearly established federal law relevant to the Court's consideration of the suppressed evidence claim asserted as a due process violation in the Amended Application.

The Douglas County District Court did not explicitly address the suppressed evidence portion of Mr. Morehead's due process claim as a federal constitutional claim. However, as noted above, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (an adjudication on the merits "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Neither party argues that the Douglas County District Court did not adjudicate the suppressed evidence portion of Mr. Morehead's claim on the merits. Therefore, the Court considers the suppressed evidence claim under the deferential standards in § 2254(d).

The Douglas County District Court on direct appeal addressed Mr. Morehead's suppressed evidence claim as follows:

> Defendant in this case issued a Subpoena Duces Tecum ("SDT") on the University of Colorado at Colorado Springs seeking school records concerning Ms. Burbach. Defendant contends that Ms. Burbach has provided conflicting testimony regarding her academic credentials as an expert witness. After assessing the alleged inconsistent testimony, the trial court issued a written order quashing the SDT without conducting an in camera review of the subpoenaed materials. The People contend that the court did not abuse its discretion in its ruling and thus its order quashing the defendant's subpoena should be affirmed.
>
> Ms. Burbach completed college in 1980, and began working for the Department of Health ("DOH") in 1984. Next she worked in toxicology, then with the hazardous materials and waste management as a chemist and finally she returned to DOH as a supervisor of the toxicology unit. As a supervisor Burbach has "done over ten thousand blood alcohols in the course of [her] career."
>
> As such, Ms. Burbach [sic] qualifications as an expert result more from her 30 years of professional experience, and less from her 4 years of undergraduate experience. Because of this, the educational records sought are irrelevant. The jury would likely place inconsequential weight to the number of hours of chemistry classes completed by Mr. Burbach from 1976 - 1980.
>
> Defendants [sic] need for such information was properly denied by the County Court. The County Court's determination that Ms. Burbach's college transcripts were irrelevant and immaterial was not arbitrary, unfair, or unreasonable, and therefore was not an abuse of discretion. Even if the County Court's order was somehow an abuse of discretion, no reasons suggest subsequent implication on behalf of the jurors, thus, any error was harmless and the order should be affirmed.

Docket No. 8-4 at 4 (citations to the record and state court filings omitted, alteration in original).

Mr. Morehead does not contend that the decision of the Douglas County District Court is contrary to clearly established federal law. That is, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially

indistinguishable Supreme Court decision that would compel a different result in his case. *See House*, 527 F.3d at 1018.

Mr. Morehead also fails to demonstrate the state court's ruling was based on an unreasonable determination of the facts or is an unreasonable application of clearly established federal law. It was not unreasonable to conclude that the number of hours of chemistry Mr. Burbach completed during her undergraduate career was immaterial in light of her thirty years of professional experience.

The state court's conclusion that Ms. Burbach's academic records were not material is reasonable because Ms. Burbach's testimony regarding the results of Mr. Morehead's blood alcohol test was not the only evidence presented at his trial regarding his impaired condition. The prosecution also presented evidence from a lab technician who conducted a second test of Mr. Morehead's blood that revealed a blood alcohol content of 0.18 as well as testimony from the arresting officer regarding the results of Mr. Morehead's roadside sobriety test and his observations that Mr. Morehead had blood-shot eyes, slurred speech, and smelled of alcohol. Furthermore, the Court agrees with the trial court's reasoning in an order denying a motion for a new trial that the jury did not rely on the results of the blood alcohol testing:

> Defendant was found guilty in this matter at jury trial on January 10, 2013 of Driving While Ability Impaired by Alcohol. Defendant is seeking a new trial based upon newly discovered information, detailed in Defendant's motion, which Defendant asserts would have allowed Defendant to better rebut both the blood alcohol content test received by the jury in this matter, and the testimony by the People's witness, Cynthia Burbach of the Colorado Department of Public Health and Environment, in support of the blood alcohol content test result.
>
> Defendant's contention, even if correct, does not justify a new trial. While the jury found Defendant guilty of Driving While Ability Impaired by

> Alcohol, they also found Defendant <u>not</u> guilty of both Driving Under the Influence and Driving Under the Influence per se (.08 or over BAC), despite the fact that they jury received a blood alcohol content test result of over .18 BAC, which is over twice the threshold of .08 for driving under the influence per se.  Given the jury's finding, they clearly did not accept the blood alcohol content test result they received as accurate and they clearly did not rely upon it in reaching their verdict.  Since Defendant and his counsel were already completely successful in impeaching the reported blood alcohol content test result, and since the jury did not rely upon it in reaching their verdict of guilty to DWAI only, further impeachment information regarding the reported blood alcohol content test result, which is what Defendant argues as grounds for a new trial, would be without effect.

Docket No. 8-8 at 1.  In light of the evidence presented at his trial and the jury's rejection of the blood alcohol content test that was the subject matter of Ms. Burbach's testimony, there is no reasonable probability that, had Ms. Burbach's educational records been disclosed to the defense, the result of Mr. Morehead's trial would have been different.  See *Kyles*, 514 U.S. at 433.

Ultimately, the Court finds that Mr. Morehead is not entitled to relief with respect to his suppressed evidence claim because he fails to demonstrate the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

## IV. CONCLUSION

For the reasons discussed in this order, Mr. Morehead is not entitled to relief on his suppressed evidence claim.  Accordingly, it is

**ORDERED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 11] is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED October 16, 2015.

                                              BY THE COURT:

                                              s/Philip A. Brimmer
                                              PHILIP A. BRIMMER
                                              United States District Judge